# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-2412

_____

JAHEIM NIXON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Tiffany M. Baker-Carper, Judge.

July 29, 2026

PER CURIAM.

Jaheim Nixon appeals from his judgment and sentence for first-degree felony murder and robbery.  He argues that the trial court abused its discretion in admitting a witness's prior consistent statements to rebut a charge of improper motive.  We disagree and affirm.

On May 21, 2022, four men in a black SUV arrived at a house in Tallahassee.  Surveillance footage captured the men exiting the SUV, entering the house, and, thirty-seven seconds later, running back out to the vehicle.  One of the residents, Robert Christian IV, was found dead inside the house with several gunshot wounds.  The police searched Christian's cell phone and discovered two Instagram chat conversations that concerned the sale of a firearm.

One conversation was with an account that the police determined belonged to Jer'Darrius Davis, the owner of the black SUV. The other conversation was with an account associated with an email address that contained the name "Jaheim Nixon." And the phone number associated with that account belonged to Nixon's then-girlfriend. In those conversations, Davis and Nixon arranged to buy a firearm from Christian. The police identified Davis, Nixon, and Edward Johnson as three of the four men who were in the SUV.

Johnson testified at Nixon's trial. Johnson said that Davis and Nixon arranged through Instagram to buy a firearm from Christian. Johnson, Davis, Nixon, and a fourth person went in Davis's SUV to Christian's house. Nixon wanted to buy the firearm, but Davis—Christian's cousin—wanted Nixon to take it. When they arrived at Christian's house, they went inside and began speaking with Christian. Johnson heard a shot go off. He did not know who shot first but claimed that he participated in firing subsequent shots. Johnson had also testified at Davis's separate trial. There he had said that "Jaheim pulled the trigger." But now, at Nixon's trial, he no longer knew whether Nixon had shot Christian. He testified that after the shooting, he and Nixon picked up Christian's firearms and left with their two companions. He also explained that several months after shooting Christian, after Johnson had been arrested for attempted murder in a separate case, a detective came to speak with him. At that time, Johnson told the detective everything that happened in Christian's shooting.

On cross-examination, the defense engaged Johnson in the following exchange:

> Q: Now, you had indicated previously that you understand you're facing life for this case; right?
> A: Yes, sir.
> Q: And no promises have been made to you; right?
> A: Yes, sir.
> Q: But you're hoping for a better deal if you testify for the State, aren't you?
> A: Yes, sir.

Q: And you realize to get a better deal you have to help them convict Mr. Nixon, don't you?
A: Yes, sir.

But on redirect examination, Johnson stated that he did not think that any consideration that he might receive from the State would be based on a specific verdict in Nixon's case. And he said that he had not yet met the prosecutor when he first spoke with the detective.

After Johnson's testimony, the State called the detective to offer Johnson's prior consistent statements to the detective. The defense objected and argued that the State sought to improperly bolster Johnson's testimony. The trial court allowed the State to introduce the prior consistent statements to rebut the defense's implicit charge that Johnson had fabricated his testimony to get a better deal from the State. The detective's recollection of what Johnson told him in that first interview matched Johnson's testimony at Nixon's trial.

The jury found Nixon guilty of first-degree felony murder and robbery. This timely appeal followed.

We review a trial court's decision to admit a witness's prior consistent statements for abuse of discretion. *Tumblin v. State*, 29 So. 3d 1093, 1100 (Fla. 2010). A witness's prior consistent statements are generally hearsay that are inadmissible at trial. *Harris v. State*, 843 So. 2d 856, 861 (Fla. 2003); *see also* § 90.802, Fla. Stat. ("Except as provided by statute, hearsay evidence is inadmissible."). But section 90.801(2), Florida Statutes, deems certain prior consistent statements non-hearsay:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is: . . . (b) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of improper influence, motive, or recent fabrication.

Nixon argues that the trial court erred by admitting the detective's testimony that relayed Johnson's prior consistent

3

statements. He contends first that the defense did not open the door for the State to rebut a charge of improper motive or fabrication. In other words, he argues that the defense did not make an "express or implied charge against [Johnson] of improper influence, motive, or recent fabrication." *Id.* But the defense's cross-examination of Johnson at least implicitly charged that Johnson's testimony was unreliable because he was hoping to receive a deal from the State on his charges. The jury could have reasonably inferred from Johnson's answers to the defense's questions that he had recently fabricated his account to receive consideration from the State. Thus, the defense opened the door for the State to rebut the charge of improper motive or recent fabrication with Johnson's prior consistent statements. *See Tumblin*, 29 So. 3d at 1101 (finding that prior consistent statements could be admitted where the cross-examination of a witness impliedly charged that "his trial testimony was a recent fabrication intended to preserve his plea deal.").

Next, Nixon argues that Johnson did not make his statements to the detective before his improper motive existed. The State argued that Johnson's improper motive began to exist when he began speaking with the prosecutor. But Nixon asserts that Johnson already had reason to give a false account when he first spoke with the detective. Nixon argues that Johnson's arrest for the attempted murder and the detective's investigation of Christian's murder were enough to give Johnson motive to fabricate. But "the motive to fabricate does not necessarily arise simply because the witness has been arrested and charged with a crime." *Shellito v. State*, 701 So. 2d 837, 841 (Fla. 1997); *see also Edwards v. State*, 662 So. 2d 405, 406 (Fla. 1st DCA 1995) ("The mere fact that police are conducting an investigation into the crime does not . . . automatically establish a motive to falsify on the part of the witness."). Nixon fails to present any evidence beyond the mere facts of an arrest and an investigation to show that Johnson's improper motive existed when he spoke with the detective, but before he met with the prosecutor. He, therefore, fails to meet his burden of demonstrating that the trial court abused its discretion by admitting Johnson's prior consistent statements.

AFFIRMED.

4

OSTERHAUS, C.J., and ROWE and LONG, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Candice K. Brower, Conflict Counsel, and Michael J. Titus, Assistant Conflict Counsel, Office of Criminal Conflict and Civil Regional Counsel Region One, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Kristie Regan, Assistant Attorney General, Tallahassee, for Appellee.